STATE EX REL. KOEFOD, RELATOR, *v.* BOARD OF COUNTY COMMISSIONERS OF HILL COUNTY ET AL., RESPONDENTS.

(No. 4,471.)

(Submitted September 23, 1919.   Decided October 30, 1919.)

[185 Pac. 147.]

*Mandamus—New Counties—Inclusion and Exclusion of Territory—County Commissioners—Discretion—Statutes and Statutory Construction.*

*Mandamus*—County Commissioners—When Writ Does not Lie.
   1.   Unless an act, performance of which by a board of county commissioners is sought to be compelled by *mandamus*, is one which the law specifically enjoins upon it as a duty resulting from the office, the writ does not lie.

Statutes and Statutory Construction—Supreme Court—Limitation of Power.
   2.   The supreme court is not a law-making body and cannot supply provisions in a statute which the legislature did not incorporate therein.

   [As to rules for construction of statutes, see note in 12 Am. St. Rep. 827.]

Same—Validity of Statute to be Upheld, When.
   3.   A statute must be given effect in its entirety if it is reasonably possible to do so.

New Counties—Power of Legislature to Create.
   4.   The creation of new counties is a subject exclusively of legislative cognizance.

Same — Inclusion and Exclusion of Territory—Procedure — Discretion—
    *Mandamus.*
    5. *Held,* that the board of county commissioners, clothed by Chapter
    226, Laws of 1919, with authority to hear and determine petitions, in
    their discretion, for the creation of new counties, may not be com-
    pelled by *mandamus,* in the absence of fraud or legislative restriction,
    to proceed first to a consideration of petitions to include new territory
    and then of those excluding territory in the order in which they were
    filed.
*Mandamus*—Public Boards—Remedy for Breach of Confidence.
    6. Where the legislature has seen fit to repose confidence in the wis-
    dom and integrity of a public board, such as the board of county
    commissioners, breach of that confidence cannot be remedied by the
    courts through writ of mandate, but only through means of the
    ballot-box.

Original application for *mandamus* by the State of Montana
on relation of E. Koefod, against the Board of County Commis-
sioners of Hill County, Montana, and Abe Crosson and others,
members thereof, J. O. Berglin et al., interveners. Proceeding
dismissed.

*Mr. Victor R. Griggs* and *Mr. Chad. A. Spaulding,* for Re-
lator, submitted a brief and argued the cause orally.

*Messrs. Norris, Hurd & Hange,* for Interveners, submitted a
brief; *Mr. George E. Hurd* argued the cause orally.

*Mr. S. C. Ford,* Attorney General, and *Mr. A. A. Grorud,*
Assistant Attorney General, for Respondents.

MR. JUSTICE HOLLOWAY delivered the opinion of the
court.

On June 18, 1919, petitions for the creation of Liberty county
were duly presented to the board of county commissioners of
Hill county—the county from which the largest area of terri-
tory to be included in the new county was to be taken. As the
territory to be detached from Chouteau county is not involved
in this controversy, no further mention of it need be made.

The territory described in the petition to be taken from Hill
county included all of ranges 4, 5, 6, 7 and 8 east of the Mon-
tana principal meridian, from the south boundary line of town-
ship 29 north, to the international boundary. The matter was

set for hearing on July 10, 1919, and due notice given. On June 28 a petition was filed with the board, praying that the territory embraced within range 9 east, from the south boundary line of township 30 north, to the international boundary line, be included in the proposed new county. On July 8 a petition was presented to the board, praying that all of the territory embraced in range 8 above be excluded from the proposed new county. The board took these several petitions under consideration, heard all evidence offered in their behalf and in opposition, and found as facts the following which are conceded by all parties hereto to be the true facts, *viz.:* That the petitions for the creation of Liberty county were sufficient in form and substance and signed by the requisite number of qualified signers to meet the requirements of the law; that the petition to include range 9 and the petition to exclude range 8 were and each of them was likewise sufficient in form and substance, signed by the required number of qualified signers and filed within the time allowed by law; that the exclusion of range 8 would not reduce the area nor the assessed valuation of the proposed new county below the minimum required by law; and that the inclusion of range 9 would not reduce the area nor the assessed valuation of Hill county below the legal minimum, nor bring any boundary line of the proposed new county within the prohibited distance of the courthouse in Havre, the county seat of Hill county.

Upon these facts the board first granted the prayer of the exclusion petition, withdrew the territory in range 8, reformed the boundary lines of the proposed county accordingly, then denied the petition to include range 9, made the other necessary findings, took the required additional steps, and called an election within the corrected limits of the new county, for November 4, to determine whether Liberty county should be created. This proceeding was thereupon instituted by a proponent of the inclusion petition to secure a writ of mandate directed to the board, requiring it to reconvene and include range 9 within the limits of the proposed new county. By permission of this

court, proponents of the exclusion petition were permitted to intervene and defend against the application on the merits.

The subjoined diagram will serve to illustrate the contentions of the respective parties. The exterior lines represent the boundaries of Hill county. The heavy lines inclose the portion of Hill county described in the petition for the creation of Liberty county.

Primarily, the question for determination is: Does the relator [1] show that he is entitled to the relief demanded? To answer this inquiry in the affirmative, it must be made to appear that the inclusion of range 9 within the proposed new county was and is an act which the law specifically enjoins upon the board as a duty resulting from the office. (Sec. 7214, Rev. Codes; *State ex rel. Stringfellow* v. *Board of Commrs.*, 42 Mont. 62, 111 Pac. 144.)

By first granting the prayer of the exclusion petition and eliminating range 8 from the boundaries of the proposed new county, the board put it beyond its power to consider favorably the petition to include range 9, for that territory was not then contiguous to any other territory within the limits of the pro-

posed new county. If, on the other hand, the board had first considered the inclusion petition and had incorporated range 9 within the boundaries of the proposed new county, it would then have been beyond its power to consider favorably the exclusion petition, for range 8 would not then have been contiguous to any remaining portion of Hill county. Reduced to its simplest form, the question for determination is: Was it the plain, legal duty of the board to consider first the petition to include range 9?

Formerly new counties were created only by direct legislative enactment. Whatever may be said of that species of legislation, the objections to it were sufficiently potent to induce the legislature in 1911 to enact a general law, by the terms of which the question whether a new county should be created was referred to the people most directly interested—the qualified electors within the proposed new county. (Chap. 112, Laws 1911.) That Act was amended in 1913 (Chap. 133, Laws 1913, p. 484), and the amended Act repealed and a new Act substituted in 1915 (Laws 1915, Chaps. 53 and 139). The Act of 1915 was repealed, and the present statute substituted for it in 1919. (Laws 1919, Chap. 226.) Throughout this legislative history the salient features of the original Act of 1911 have been retained. The principle of local self-determination has been the controlling impulse of every one of these statutes. Every one of them has provided for the initiation of the proceedings by a petition directed to the board of county commissioners. Provision has been made likewise for the opponents of a new county to be heard and for the exclusion, upon petition, of territory included within the boundaries of a proposed new county.

If two or more petitions for exclusion were presented, the law has always required that they be considered by the board in the order in which they were filed with the clerk. In other words, the principle, first in time, first in right, prevailed. Until the present statute was enacted, there has never been any provision by which territory additional to that described in the petition for creation could be included within the limits of a

proposed new county. (*State ex rel. Jacobson* v. *Board of County Commrs.*, 47 Mont. 531, 134 Pac. 291.) This new feature appears in section 2 of the present law, and reads as follows: "On final hearing the board of commissioners, upon petition of not less than fifty per cent of the qualified electors who are resident property taxpayers of any territory lying outside said proposed new county, and contiguous to the boundary line of said proposed new county, and of the old county or counties from which such territory is proposed to be included, asking that said territory be included within the proposed new county, must make such changes in the proposed boundaries as will include such territory in such new county." If this provision stood alone it might with reason be argued that when the board on final hearing of the petition to create Liberty county found the petition to include the territory in range 9, proper in form and substance and subscribed by the required number of qualified signers, it had no discretion to exercise, but was compelled to grant the petition and reform the boundary lines accordingly. But the preceding sentence of the same section reads as follows: "On final hearing the board of commissioners, upon petition of not less than fifty per cent of the qualified electors (as shown by the official registration books on the day of the filing of any such petition) of any territory lying within said proposed new county contiguous to the boundary line of the said proposed new county and of the old county from which such territory is proposed to be taken, and lying entirely within a single old county and described in said petition, asking that said territory be not included within the proposed new county, must make such changes in the proposed boundaries as will exclude such territory from such new county, and shall establish and define such boundaries." This provision was construed in *State ex rel. Arthurs* v. *Board of County Commrs.*, 44 Mont. 51, 118 Pac. 804, and it was there held that if the board finds that an exclusion petition is in due form and signed by the requisite number of qualified signers, the duty of the board to withdraw the territory is absolute, "one resulting from the office and specifically

enjoined by law." With equal propriety it may be said that if the board finds a petition to include additional territory is in due form, signed by the requisite number of qualified signers, that the inclusion of the territory will not reduce the area or the assessed valuation of the old county below the minimum, nor bring any boundary line of the proposed county within the prohibited distance of the courthouse of the old county, then the duty of the board to grant the petition is likewise absolute. But, as before observed, in this instance it was impossible for the board to grant the petition to exclude range 8 and also the petition to include range 9. The act of granting either one operated *ipso facto* to deny the other. The only question of moment which confronted the board was: Which of these two petitions should be passed upon first?

If it be said that there is a lapse in the legislation, it is suffi-[2] cient answer to say that this court is not a lawmaking body, and cannot supply the deficiency. The statute is not open to the application of the rule that where two provisions of an Act are conflicting, the last in order of arrangement controls. The two provisions quoted above are not conflicting. A conflict arises only when it is sought to apply the statute to such an extraordinary set of circumstances as disclosed in this proceeding. It is one of the elementary rules of construction that [3] the statute must be given effect in its entirety if it is reasonably possible to do so. (*Thomas* v. *Smith,* 1 Mont. 21; *State ex rel. A. C. M. Co.* v. *District Court,* 26 Mont. 396, 68 Pac. 570, 69 Pac. 103; *Stadler* v. *City of Helena,* 46 Mont. 128, 127 Pac. 454.)

The creation of new counties is a subject exclusively of legis-[4, 5] lative cognizance. (11 Cyc. 343; 7 R. C. L. 928.) In enacting Chapter 226 it was competent for the legislature to prescribe the order in which an exclusion petition and an inclusion petition should be considered by the board, but it failed to do so. It did, however, create the board a special tribunal, and clothed it with authority to hear the petitions and determine them, and in the absence of legislative restrictions this

necessarily involved the authority to determine which of the two should be considered first. Apparently the legislature referred this question to the sound discretion of the board, and in the absence of fraud its action thereon is not subject to judicial control by *mandamus*. (*State ex rel. Copper Co.* v. *District Court,* 40 Mont. 206, 105 Pac. 721.)

It is argued that the rule, first in time, first in right, should prevail here, as it does with respect to the consideration of two or more exclusion petitions, and since the petition to include range 9 was filed before the petition to exclude range 8, it should have been considered and effect given to it before the exclusion petition was passed upon. But the rule is made applicable to exclusion petitions by direct legislative enactment, whereas it is not declared applicable to the consideration of a petition for exclusion and a petition to include new territory, and there is not anything in the statute to indicate that the legislature intended the same rule to apply, but neglected to so declare. It did not specifically enjoin upon the board the duty to consider a petition to include new territory and a petition to exclude territory in the order in which they are filed, and the courts are without authority to read such a provision into the statute.

Ultimately, the authority to dispose of questions of this character must rest with some officer or body. The legislature has **[6]** seen fit to repose the confidence in the wisdom and integrity of the board, and for any breach of that confidence recourse must be had to the ballot-box.

Our conclusion is that relator has failed to show that a clear legal duty is specifically enjoined upon the board to consider the petition to include range 9 before it passed upon the petition to exclude range 8. This proceeding is therefore dismissed.

*Dismissed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HURLY, PATTEN and COOPER concur.