ANDREWS, Executrix, vs. JENKINS and others.

INSTRUCTIONS TO JURY. *(1) When plaintiff not injured by erroneous instructions.*

SALE: PERSONAL PROPERTY. *(2) When purchaser takes free from prior incumbrance. (3) Case stated and rule applied.*

EVIDENCE. *(4) Parol evidence admissible to show that conveyance of personalty was to secure advances.*

1. Where the undisputed evidence in a case would justify a direction to the jury to find for defendant, plaintiff cannot be injured by erroneous instructions.

2. One who purchases personal property in good faith, for value, of the general owner in possession, without notice, actual or constructive, that it is incumbered, will hold it discharged of any prior incumbrance.

3. K. agreed in writing to sell A. all the pine timber on a certain tract of

Andrews, Executrix, vs. Jenkins and others.

land for a specified price. The next day, A. and G. entered into a written contract in respect to the same timber, which stated that G. proposed to go upon said tract and cut, drive and deliver at a certain boom all merchantable pine timber thereon; that for so doing G. should have what the logs would bring over and above the cost at the place of sale; and that, to keep the business through the winter, A. would advance money to carry it on, and all things provided or purchased with A.'s money should be his property until all debts and liens were paid. *Held*, that under such contract A. had only a special interest in or lien upon the logs for the amount of his advances, and G. was the general owner.

4. *It seems* that parol evidence was admissible to show that A. took the conveyance of the timber from K. for G., as security for A.'s advances to G.

APPEAL from the Circuit Court for *Winnebago* County.

Replevin, for a quantity of pine logs. The facts, as they appeared on the trial, are as follows: By an instrument in writing dated December 7, 1870, one Ketchum agreed to sell to the plaintiff's testator, George R. Andrews, all the pine timber on a certain forty-acre tract of land for $5,000, payable as therein specified. It is not disputed that Andrews paid for the timber as agreed. It was proved without objection, and the evidence is uncontradicted, that the contract with Ketchum for the purchase of this timber was made by and for the firm of Wm. Gill & Son, and the contract therefor was made in the name of Andrews as security for moneys which he had advanced and was to advance thereafter, for Gill & Son, to pay for the timber. Immediately after the execution of the agreement of December 7, Andrews and Gill & Son entered into a contract in writing in respect to the same timber, as follows:

"Messrs. Wm. Gill & Son propose to go on to the N. E. ¼ of the N. E. ¼ of Sec. 7, Town 25, Range 13, in Waupaca county, Wis., and cut, drive and deliver at the boom, on Wolf river, well rafted, all the merchantable pine timber thereon; and for so doing the parties above named shall have what the logs will bring over and above the cost at the place where they are sold. And to keep the business through the winter,

the undersigned will advance, from time to time, what may be necessary to carry along the business; all things furnished, provided or purchased with the money of the said G. R. Andrews to be his property until all debts, dues and liens are paid.

"*Dated December 8, 1870.*

"G. R. ANDREWS,
"WM. GILL & SON."

During the winter of 1870–71, Gill & Son cut on said land, rafted to market, and sold, logs to the amount of $8,800, and paid to Andrews $5,000 thereof, which was all he demanded on account of his advances to them and for their benefit. No account of such advances was ever stated between the parties to the above contract, and it does not appear that any account thereof was kept by either of them. Neither does it appear that any further advances were made under said contract by Andrews after the receipt by him of the $5,000, which was probably in the spring or summer of 1871.

During the winter of 1871–72, Gill & Son cut about 300,000 feet of logs on the same land, ran them to market, and sold them as they did the previous year. The logs in controversy are a part of such 300,000 feet. They were sold by Gill & Son to one Haight in September, 1872, and in March following were sold by Haight to the defendants, who paid the market price for them. The defendant did not know, and it does not appear that Haight knew, that Andrews had any claim on the logs. Due demand was made of the defendants for the logs before this action was commenced.

The defendants had a verdict and judgment; and the plaintiff appealed.

*Charles Barber*, for appellant:

The contract between Andrews and Gill & Son was nothing more than a contract that the latter should cut, drive and deliver the pine timber mentioned in the complaint. Neither the contract itself, nor the evidence introduced to interpret it, shows or tends to show that Andrews was to part with his title

to the logs, or that Gill & Son were to have any interest in the timber. Even if the court should construe the contract between Andrews and Gill & Son to be a bill of sale, it was certainly a conditional one. The contract provides, "all things furnished, provided or purchased with the money of the said G. R. Andrews, to be his property until all debts, dues and liens are paid." If the agreement was that Andrews should furnish the timber and the money necessary to cut and drive the logs under this contract, the logs were to be his property until all debts and dues were paid. It is well settled that when the buyer is bound by the contract to do anything as a condition, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the buyer's possession. And in this case the payment of all advances was a condition precedent to the passing of the title. Gill & Son not having paid those advances, the condition was not performed, and the title remained in Andrews. Benjamin on Sales, 336; *Hunter v. Warren*, 1 Wis., 141; *Ballard v. Burgett*, 40 N. Y., 314; 2 Kent's Com., 498; *Coggill v. Hartford & N. H. R. R. Co.*, 3 Gray, 545; *Hirschorn v. Canney*, 98 Mass., 189; *McNeil v. Tenth Nat. Bank*, 55 Barb., 69; *Hotchkiss v. Hunt*, 49 Me., 213; *Baker v. Hall*, 15 Iowa, 277; *Hart v. Carpenter*, 24 Conn., 427; *Day v. Bassett*, 102 Mass., 445; 105 id., 255. It is well settled that the title of the vendor is preferred to that of a *bona fide* subpurchaser. 2 Kent's Com. (12th ed.), 498, note; 98 Mass., 149; *Kenney v. Planer*, 3 Daly, 131. It was the manifest intent of the parties that Andrews should hold, and by the terms of the agreement he did hold, the title to the logs till all debts were paid, debts for money advanced to put in the logs, as well as to buy the timber. And the court erred in charging that Andrews' interest in the logs, if any, was a special one. That question should have been passed upon by the jury.

*Gabe Bouck,* for the respondents, argued that Andrews' only interest in the property was a special one, as security, in the nature of a mortgage for his advances, and the relation of vendor and vendee never existed between Andrews and Gill & Son. Their relation being that of mortgagor and mortgagee, it was void as to *bona fide* purchasers. If Andrews was a vendor, and it was only a conditional sale, and if there was anything due to Andrews from Gill & Son, it was incumbent upon the plaintiff to show the fact and the amount. *Leighton v. Stevens,* 19 Me., 154.

LYON, J. We are not concerned to inquire whether the instructions which the learned circuit judge gave the jury are correct in every particular, because we are satisfied that the undisputed evidence would have justified a direction to the jury to find for the defendants, and hence an erroneous instruction could not possibly injure the plaintiff.

The evidence proves conclusively that George R. Andrews, the plaintiff's testator, had, at most, but a special interest in the logs in controversy, which interest was a lien upon the logs for any unpaid balance of advances made by him pursuant to the contract of December 8th; and so the jury were instructed. While such balance remained unpaid, probably Andrews might lawfully have taken possession of the logs, as against Gill & Son. Yet Gill & Son were the general owners of the logs, subject only to the lien for such advances, and their possession of them was never interfered with by Andrews. Indeed the latter permitted Gill & Son to run the logs to market and sell them as their own, without (so far as it appears) taking any steps to protect his interests, or to inform purchasers of his rights.

It is too well settled to admit of argument or doubt, that if the general owner of personal property, having possession thereof, sell and deliver it to a person who has no notice, actual or constructive, that the property is incumbered, but

who purchases it in good faith for value, such purchaser will hold the property discharged of any prior incumbrance. This principle is decisive of the present case. The defendants purchased the logs in controversy in the market, and paid for them the market price, without notice, either actual or constructive, that Andrews had or claimed any lien upon or interest in them; and this after the property had been held by their vendor six months from the time he purchased the same of Gill & Son. On the undisputed facts of the case we are clearly of the opinion that Andrews in his lifetime was, and the plaintiff is, estopped from asserting any claim to the logs, and hence, that this action cannot be maintained.

The position that Andrews had only a special interest in or lien upon the logs in controversy, may well rest upon the contract of December 8th, without resorting to parol testimony. Yet, on the authority of *Kent v. Agard*, 24 Wis., 378, and *Wilcox v. Bates*, 26 id., 465, no good reason is perceived why parol proof is not admissible to show that Andrews took the conveyance of the timber from Ketchum for Gill & Son as security for his advances to them. Construing the two contracts of December 7th and 8th in the light of such parol evidence, there seems to be no room to doubt that the only interest which Andrews had in the logs in controversy was a lien or incumbrance thereon in the nature of a mortgage, for his unpaid advances.

*By the Court.* — The judgment of the circuit court is affirmed.